USDC SCAN INDEX SHEET

CREATIVE FOREST

MARCOS Y MOLDURAS

MR
3:96-CV-01388
*1*
*CMP.*

J. Ernesto Grijalva, Esq., Bar No. 117037
Margarita Haugaard, Esq., Bar No. 159199
LAW OFFICES OF J. ERNESTO GRIJALVA
550 West B Street, Suite 340
San Diego, California 92101-3539
(619) 234-1776; Facsimile (619) 235-6749

Attorneys for plaintiff
CREATIVE FOREST INDUSTRIES, a sole proprietorship

**FILED**

AUG 9 1996

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CREATIVE FOREST INDUSTRIES a sole proprietorship; <br><br> Plaintiff, <br><br> v. <br><br> MARCOS Y MOLDURAS DEL PACIFICO, a Mexico business entity of unknown form; CJR FRAMES, INC., a California corporation; RAMON DIAZ, an individual; CESAR MACIEL, an individual; and DOES 1 through 100, inclusive, <br><br> Defendants. | ) CASE NO: '961388 H CM <br> ) <br> ) VERIFIED COMPLAINT <br> ) FOR: <br> ) FUNDAMENTAL BREACHES <br> ) OF CONTRACT <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) (DEMAND FOR JURY TRIAL) |

Plaintiff CREATIVE FOREST INDUSTRIES alleges:

### I.  JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction of this action because it arises under the United Nations Convention on Contracts for the International Sale of Goods (**"CISG"**) ratified by the United States of America (12/11/86) and by the United Mexican States (**"Mexico"**).  The CISG entered into force on January 1, 1988.



1

ORIGINAL

The United States Constitution, Article III § 2 extends the federal judicial power to "cases, in law and equity, arising under ... treaties made" under federal authority. The subject matter of this action is based on Plaintiff's rights and remedies under the CISG. The jurisdiction of this Court is founded on 28 U.S.C. § 1331.

2.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because: a substantial part of the events and/or omissions (such as delivery of the goods to defendants' carrier) giving rise to these claims occurred in San Diego County; the principal place of business of defendant CJR FRAMES, INC. is located in San Diego County; and plaintiff has reason to believe that defendant CESAR MACIEL and/or defendant RAMON DIAZ may reside in San Diego County.

## II. APPLICABLE LAW

3.    The CISG is a self-executing treaty in that it expressly creates privately enforceable rights.    United States courts are bound under international law to use the CISG when the parties to a contract have places of business in different "Contracting States" to the CISG.  Both the United States and Mexico are Contracting States to the CISG.  A correct copy of the CISG is attached as **Exhibit "A"** and incorporated by reference.

4.    The CISG governs all contracts for the international sale of goods unless the parties exclude application of the CISG.  CISG Art. 6.  The parties to the agreements herein did not expressly opt out of the CISG.  Thus, the CISG applies to Plaintiff's claim for relief based on fundamental breaches of contract.

/ / /

/ / /

2

ORIGINAL

5. The underlying policies of the CISG are to promote uniformity in its application and observance of good faith in international trade. CISG Art. 7(1). The CISG's purpose is to avoid conflict-of-law problems and the imposition of domestic law onto the CISG's provisions. See CISG Art. 7(2).

6. Article 7(2) of the CISG mandates that any gaps are to be filled by the CISG's general principles; and in the absence of such principles, by general principles of international law.

### III. PARTIES

7. Plaintiff CREATIVE FOREST INDUSTRIES, a sole proprietorship, ("Seller" or "Plaintiff") is, and at all relevant times was, a sole proprietorship of Robert Pate, a business entity duly organized and existing under the laws of California, with its principal place of business in Downey, California.

8. Based upon information and belief, Plaintiff alleges that defendant MARCOS Y MOLDURAS DEL PACIFICO, a Mexico business entity of unknown form ("Mexican Company") is, and at all relevant times was, a business entity, with its principal place of business in Baja California, Mexico.

9. Based upon information and belief, Plaintiff alleges that defendant RAMON DIAZ, an individual ("Mr. Diaz") is, and at all relevant times was, a natural person and competent adult, and a citizen of the Republic of Mexico.

10. Based upon information and belief, Plaintiff alleges that defendant CESAR MACIEL, an individual ("Mr. Maciel") is, and at all relevant times was, a natural person and competent adult, and a citizen of the Republic of Mexico.

/ / /

3

ORIGINAL

11.   Plaintiff is informed and believes, and on the basis of such information and belief ("based upon information and belief"), alleges that defendant CJR FRAMES, INC., ("U.S. Company") is, and at all relevant times was, established as a conduit for the operations of the Mexican Company.  Therefore, the U.S. Company is, and at all relevant times was, organized as a California corporation, with its principal place of business in San Diego County, California.

12.   Based upon information and belief, Plaintiff alleges that the U.S. Company is, and at all relevant times was, formed and used by the Mexican Company as a device to buy materials for the Mexican Company and distribute the Mexican Company's product in a manner which would allow the avoidance of payment on any liabilities which either company might incur within the United States. Plaintiff further alleges that the U.S. Company is, and at all relevant times was, inadequately capitalized compared with the nature of its business and foreseeable risks of loss.

13.   Based upon information and belief, Plaintiff alleges that the U.S. Company is, and at all relevant times was, a mere shell, instrumentality, and conduit through which the Mexican Company carried on its business in the United States.  Plaintiff further alleges that the U.S. Company acted as an agent for the Mexican Company for purposes of:  paying invoices corresponding to lumber and other goods purchased for the Mexican Company in the United States; and selling Mexican Company's manufactured wood products in the United States.

/ / /

/ / /

4

ORIGINAL

14.    Based upon information and belief, Plaintiff alleges that there exists, and at all relevant times there has existed, a unity of interest and ownership between the Mexican Company and its intermediary, the U.S. Company, such that any separateness between them has ceased to exist, in that the Mexican Company controlled and dominated the U.S. Company:  by using the U.S. Company to get the lumber the Mexican Company needed to manufacture its wood products; by using the U.S. Company to sell the Mexican Company's wood products in the United States; and by causing the U.S. Company's corporate assets to be transferred to the Mexican Company without adequate consideration to the detriment of creditors, thus concentrating assets in the Mexican Company and liabilities in the U.S. Company.

15.    Based upon information and belief, Plaintiff alleges that adherence to the fiction of the separate existence of the Mexican Company and its intermediary, the U.S. Company, would permit an abuse of the corporate privilege and would produce an inequitable result in that:  Plaintiff sold lumber to the U.S. Company because Plaintiff knew that the Mexican Company would manufacture this lumber into wood products which it would sell in the United States through the U.S. Company; however, the U.S. Company transferred the proceeds from the sales of the Mexican Company's wood products to the Mexican Company instead of paying Plaintiff for the lumber purchased for the Mexican Company's benefit.

16.    Based upon information and belief, Plaintiff alleges that adherence to the fiction of the separate existence of the Mexican Company and its intermediary, the U.S. Company, would permit an abuse of the corporate privilege and would sanction a fraud in

ORIGINAL

part because the Mexican Company caused the U.S. Company's corporate assets to be transferred to the Mexican Company without adequate consideration for the purpose of avoiding and preventing attachment and execution by creditors (including Plaintiff), thereby rendering the U.S. Company insolvent and unable to meet its obligations incurred on behalf of the Mexican Company.

17. Based upon information and belief, Plaintiff alleges that agents for the Mexican Company and the U.S. Company specifically authorized, directed and/or participated in the tortious acts and/or omissions of the other.

18. Based upon information and belief, Plaintiff further alleges that an ordinarily prudent businessperson, knowing what the agents for the Mexican Company and the U.S. Company knew at relevant times, would not have acted similarly under the circumstances; i.e., an ordinarily prudent businessperson would not have specifically authorized, directed and/or participated in the tortious acts and/or omissions conducted by agents for the Mexican Company and the U.S. Company.

19. The true names and capacities of the defendants named as DOES 1 through 100, inclusive, are unknown to Plaintiff, who therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege the true names and capacities of DOES 1 through 100, inclusive, when they are ascertained. Each of the defendants fictitiously named as DOES 1 through 100, inclusive, is legally at fault in some manner for the acts and admissions alleged in this complaint.

20. Each of the defendants was, and is, the agent, employee, partner, and/or principal of the remaining defendants, and

6

ORIGINAL

jointly participated in, and/or had knowledge of, and ratified the wrongful acts alleged. In doing these acts, each of the defendants was in the course and scope of such defendants' agency, partnership, and/or employment.

## IV. NATURE OF THE CASE

21. Around 1986, Mr. Diaz, who represented that he was the co-owner of the U.S. Company, contacted Robert Pate ("**Mr. Pate**"), sole proprietor of Seller. Mr. Diaz told Mr. Pate that the U.S. Company wanted to order lumber from Seller to be delivered to the Mexican Company's carrier, who would transport it over the border so that the Mexican Company could manufacture the lumber into wood products which the U.S. Company would then sell in the United States ("**Transactions**").

22. From 1986 through June 1996, the Transactions were performed as follows: the U.S. Company would place orders with Seller on a regular basis; Seller never delivered the lumber to the U.S. Company, instead Seller would deliver the lumber to a transportation company, invariably to the reload facility of Hampton Lumber Sales, Co., located in National City ; the carrier would deliver the lumber to the Mexican Company in Baja California, Mexico; the Mexican Company would manufacture the lumber into wood products; the U.S. Company would sell the Mexican Company's wood products in the United States; and the U.S. Company would pay Seller for the lumber out of the proceeds of the sales of the Mexican Company's wood products.

23. The Transactions were financed as follows: Seller would send the invoices to the U.S. Company; payment would be due "NET 30 days" after the invoice date (see Exhibit Nos. "C" through

7

ORIGINAL

"H"); Seller would occasionally allow payment to be made 60 to 80 days after the invoice date so that the U.S. Company would have sufficient time to sell the Mexican Company's wood products; and the U.S. Company would make payments for the Mexican Company by issuing checks to Seller from a U.S. bank account.

24.    During 1992 and 1993, Seller provided certificates of origin for Customs purposes.  These certificates of origin stated that the shipper and the consignee were "Marcos y Molduras del Pacífico y/o [and/or] C.J.R. Frames, Inc.," whose business addresses were described as:  279 Zenith Street, Chula Vista, California.  A correct copy of one of these certificates of origin is attached as **Exhibit "B"** and incorporated by reference.

25.    By December 1994, the outstanding amounts due for the sale of lumber to the Mexican Company and the U.S. Company had gone beyond the 60-to-80-day extension of the due date that Seller had allowed.  Mr. Pate told the agents for the Mexican Company and the U.S. Company that Seller wanted some type of security in exchange for a further extension of credit.   Mr. Maciel and Mr. Diaz agreed to execute a personal guarantee (**"Guaranty"**), whereby each agreed to be responsible for all amounts owed by the U.S. Company, "including court costs, collection charges and/or attorney fees."  The express language of the Guaranty states that it is an "open and continuing guarantee notwithstanding any changes, removals, extensions or the like granted by Creative Forest."  A correct copy of the Guaranty is attached as **Exhibit "C"** and incorporated by reference.

26.    The Mexican Company paid for each of the approximately 20 Transactions that Seller invoiced in 1995 and sent

8

ORIGINAL

to the U.S. Company.

27. Around February 1, 1996: Mr. Diaz contacted Mr. Pate and placed an order on the Mexican Company's behalf for 19,023 board feet ("BF") of pine; and Seller issued invoice number 4838 in the amount of $8060.35 ($8560.35 minus $500.00 in credit) and sent it to the U.S. Company ("Invoice No. 1"). A correct copy of this invoice is attached as **Exhibit "D"** and incorporated by reference.

28. Around February 29, 1996: Mr. Diaz contacted Mr. Pate and placed an order on the Mexican Company's behalf for 20,308 BF of pine; and Seller issued invoice number 4863 in the amount of $9,646.30 and sent it to the U.S. Company ("Invoice No. 2"). A correct copy of this invoice is attached as **Exhibit "E"** and incorporated by reference.

29. Around March 15, 1996: Mr. Diaz contacted Mr. Pate and placed an order on the Mexican Company's behalf for 9,414 BF of pine; and Seller issued invoice number 4808 in the amount of $4,471.65 and sent it to the U.S. Company ("Invoice No. 3"). A correct copy of this invoice is attached as **Exhibit "F"** and incorporated by reference.

30. Around March 15, 1996: Mr. Diaz contacted Mr. Pate and placed an order on the Mexican Company's behalf for 10,363 BF of pine; and Seller issued invoice number 4828 in the amount of $3,958.67 and sent it to the U.S. Company ("Invoice No. 4"). A correct copy of this invoice is attached as **Exhibit "G"** and incorporated by reference.

31. Around May 10, 1996: Mr. Diaz contacted Mr. Pate and placed an order on the Mexican Company's behalf for 20,917 BF of pine; and Seller issued invoice number 4940 in the amount of

9

ORIGINAL

$9,271.33 and sent it to the U.S. Company ("Invoice No. 5"). A correct copy of this invoice is attached as **Exhibit "H"** and incorporated by reference.

32. Around May 13, 1996, Seller received check number 6573 dated May 10, 1996, issued on the Wells Fargo Bank account of the U.S. Company (**"NSF Check"**). The NSF Check, made out in the amount of $8060.35, was purportedly issued as payment for Invoice No. 1.

33. Around May 21, 1996, Seller's bank returned the NSF Check to Seller because it was non-negotiable due to insufficient funds. Around May 21, 1996, Mr. Pate contacted Mr. Diaz, and told him that Seller was unable to negotiate the NSF Check and demanded that Seller be paid the amounts owed for the sale of lumber to the Mexican Company. On May 21, 1996, Seller caused the NSF Check to be returned to the U.S. Company via U.S. mail. A correct copy of the NSF Check is attached as **Exhibit "I"** and incorporated by reference.

34. Through June 1996, Seller made telephone calls to the Mexican Company's agents on several occasions for the purpose of demanding payment of Invoice Nos. 1 through 5.

35. On July 15, 1996, Mr. Pate faxed letters to the Mexican Company, the U.S. Company, Mr. Diaz and Mr. Maciel, in which Seller: fixed an additional two-week period for Defendants to pay their obligations under Invoice Nos. 1 through 5 in compliance with CISG Art. 63; and requested a prompt response from Defendants as to whether or not they intended to comply with Seller's demand. A correct copy of Seller's notification of an additional period of time in which Defendants may perform (**"Notification Letter"**) is

ORIGINAL

attached as **Exhibit "J"** and incorporated by reference.

36.  To date, Defendants have not paid Seller the amounts due under Invoice Nos. 1 through 5.

37.  The two-week period fixed in Seller's Notification Letter has expired.  As of the date of the signing of this complaint, Seller had still not received any payment from Defendants.

38.  As a result of Defendants' acts and omissions, Seller has suffered damages in the principal amount of $35,408.30, related damages in an amount to be determined according to proof, plus the maximum rate of interest thereon allowed by law.

39.  Based upon information and belief, Seller alleges that Defendants' acts and omissions constitute violations of their obligation of good faith pursuant to the CISG.

### FIRST CLAIM FOR RELIEF
(Fundamental Breaches of Contracts Against All Defendants)

40.  Plaintiff realleges and incorporates by reference paragraphs 1 through 39 of this complaint as though fully set forth.

41.  Pursuant to the terms of the parties' agreements, as evidenced by Invoice Nos. 1 through 5, Seller represented that it would deliver certain quantities of lumber to Defendants' carrier.  See Exhibits "D" through "H".

42.  Seller fully performed its obligations under the agreements by timely delivering certain quantities of lumber to Defendants' carrier.

43.  Pursuant to the terms of the parties' agreements, as evidenced by Invoice Nos. 1 through 5 and the Guaranty, Defendants represented that they would make payment in full of all

11

ORIGINAL

amounts due under these obligations relating to these lumber purchases.  See Exhibits "C" through "H".

44.  In conformity with CISG Art. 63, the Seller gave Defendants an additional period of time of reasonable length in which to pay the amounts due under Invoice Nos. 1 through 5.  This additional two-week period has expired.  Defendants have failed to perform within the additional period of time fixed by Seller pursuant to CISG Art. 63.

45.  To date, Defendants have failed to pay the amounts due under Invoice Nos. 1 through 5.

46.  Defendants' failures to make timely payment of the amounts due under Invoice Nos. 1 through 5 constitute fundamental breaches of contract in violation of CISG Arts. 25, 53 and 59. Defendants' breaches have resulted in such detriment to Seller as to substantially deprive Seller of what it was entitled to expect under the parties' agreements.

47.  Based upon information and belief, Seller alleges: that Defendants did foresee that Seller would be substantially deprived of what it was entitled to expect under the parties' agreements; and assuming arguendo that Defendants did not foresee Seller's substantial deprivation, that a reasonable person of the same kind in the same circumstances would have foreseen such a result.

48.  Seller has performed all of its contractual obligations under Invoice Nos. 1 through 5 pursuant to CISG Art. 30, except those that it was excused from performing.

49.  Pursuant to CISG Arts. 61, 62, 74 and 78, Seller is entitled to payment in full of the principal amounts due under

ORIGINAL

Invoice Nos. 1 through 5, applicable interest and other damages caused by Defendants' failure to make timely payments.

50. As a direct result of Defendants' fundamental breaches of contract, Seller has been damaged in an amount not less than: the principal amount of $35,408.30; related damages in an amount to be determined according to proof; plus the maximum rate of interest thereon allowed by law.

51. Pursuant to the Guaranty, Mr. Maciel and Mr. Diaz each undertook responsibility for all outstanding payments, "including court costs, collection charges and/or attorney fees." See Exhibit "C".

52. As a direct result of Defendants' fundamental breaches of contract, Seller has retained the Law Offices of J. Ernesto Grijalva for legal representation relating to enforcement of the parties' agreements. Mr. Maciel and Mr. Diaz are responsible for the payment of all court costs, attorneys' fees and collection charges related to this action.

WHEREFORE, Plaintiff prays for judgment against all and each of the Defendants as follows:

A.    for damages in an amount to be determined according to proof, but not less than $35,408.30, related damages, plus the maximum rate of interest thereon allowed by law;

B.    for attorneys' fees, costs and other expenses according to proof; and

13

ORIGINAL

C.     for such other and further relief as the Court deems just and proper.

WHEREFORE, Plaintiff requests a trial by jury.

DATE:   August 8, 1996        LAW OFFICES OF J. ERNESTO GRIJALVA

By:_____
   J. ERNESTO GRIJALVA
   Attorneys for plaintiff
   CREATIVE FOREST INDUSTRIES,
   a sole proprietorship

14

ORIGINAL

## VERIFICATION

I, the undersigned, certify and declare that I have read the foregoing **COMPLAINT FOR FUNDAMENTAL BREACHES OF CONTRACT** and know its contents.

I am the owner of CREATIVE FOREST INDUSTRIES, a sole proprietorship, the plaintiff in this action, and I make this verification for that reason. I am informed and believe, and on that ground allege, that the matters stated in the document described above are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Downey, California.

Date: July 31st, 1996

Robert Pate for
CREATIVE FOREST INDUSTRIES,
a sole proprietorship

cases\forest\plead\cmplt.1

15

ORIGINAL

ORIGINAL

District of Columbia (Washington, D.C.): Executive Secretary; Assistant Executive Secretary; Mayor's Special Assistant and Assistant to the Executive Secretary; Secretary of the District of Columbia

Guam (Territory of): Director, Department of Administration; Acting Director, Department of Administration; Deputy Director, Department of Administration; Acting Deputy Director, Department of Administration

Northern Mariana Islands (Commonwealth of the): Attorney General; Acting Attorney General; Clerk of the Court, Commonwealth Trial Court; Deputy Clerk, Commonwealth Trial Court

Puerto Rico (Commonwealth of): Under Secretary of State; Assistant Secretary of State for External Affairs; Assistant Secretary of State; Chief, Certifications Office; Director, Office of Protocol; Assistant Secretary of State for International Affairs; Chief, Certification Office

Virgin Islands of the United States: no authority designated

## UNITED NATIONS CONVENTION ON CONTRACTS FOR THE INTERNATIONAL SALE OF GOODS

THE STATES PARTIES TO THIS CONVENTION,

BEARING IN MIND the broad objectives in the resolutions adopted by the sixth special session of the General Assembly of the United Nations on the establishment of a New International Economic Order,

CONSIDERING that the development of international trade on the basis of equality and mutual benefit is an important element in promoting friendly relations among States,

BEING OF THE OPINION that the adoption of uniform rules which govern contracts for the international sale of goods and take into account the different social, economic and legal systems would contribute to the removal of legal barriers in international trade and promote the development of international trade,

HAVE AGREED as follows:

### PART I

### SPHERE OF APPLICATION AND GENERAL PROVISIONS

#### Chapter I

#### SPHERE OF APPLICATION

##### Article 1

(1) This Convention applies to contracts of sale of goods between parties whose places of business are in different States:
(a) when the States are Contracting States; or
(b) when the rules of private international law lead to the application of the law of a Contracting State.

(2) The fact that the parties have their places of business in different States is to be disregarded whenever this fact does not appear either from the contract or from any dealings between, or from information disclosed by, the parties at any time before or at the conclusion of the contract.

(3) Neither the nationality of the parties nor the civil or commercial character of the parties or of the contract is to be taken into consideration in determining the application of this Convention.

##### Article 2

This Convention does not apply to sales:
(a) of goods bought for personal, family or household use, unless the seller, at any time before or at the conclusion of the contract, neither knew nor ought to have known that the goods were bought for any such use;
(b) by auction;
(c) on execution or otherwise by authority of law;
(d) of stocks, shares, investment securities, negotiable instruments or money;
(e) of ships, vessels, hovercraft or aircraft;
(f) of electricity.

##### Article 3

(1) Contracts for the supply of goods to be manufactured or produced are to be considered sales unless the party who orders the goods undertakes to supply a substantial part of the materials necessary for such manufacture or production.

(2) This Convention does not apply to contracts in which the preponderant part of the obligations of the party who furnishes the goods consists in the supply of labour or other services.

##### Article 4

This Convention governs only the formation of the contract of sale and the rights and obligations of the seller and the buyer arising from such a contract. In particular, except as otherwise expressly provided in this Convention, it is not concerned with:
(a) the validity of the contract or of any of its provisions or of any usage;
(b) the effect which the contract may have on the property in the goods sold.

##### Article 5

This Convention does not apply to the liability of the seller for death or personal injury caused by the goods to any person.

##### Article 6

The parties may exclude the application of this Convention or, subject to article 12, derogate from or vary the effect of any of its provisions.

#### Chapter II

#### GENERAL PROVISIONS

##### Article 7

(1) In the interpretation of this Convention, regard is to be had to its international character and to the need to promote uniformity in its application and the observance of good faith in international trade.

(2) Questions concerning matters governed by this Convention which are not expressly settled in it are to be settled in conformity with the general principles on which it is based or, in the absence of such principles, in conformity with the law applicable by virtue of the rules of private international law.

##### Article 8

(1) For the purposes of this Convention statements made by and other conduct of a party are to be interpreted according to his intent where the other party knew or could not have been unaware what that intent was.

(2) If the preceding paragraph is not applicable, statements made by and other conduct of a party are to be interpreted according to the understanding that a reasonable person of the same kind as the other party would have had in the same circumstances.

(3) In determining the intent of a party or the understanding a reasonable person would have had, due consideration is to be given to all relevant circumstances of the case including the negotiations, any practices which the parties have established between themselves, usages and any subsequent conduct of the parties.

##### Article 9

(1) The parties are bound by any usage to which they have agreed and by any practices which they have established between themselves.

(2) The parties are considered, unless otherwise agreed, to have impliedly made applicable to their contract or its formation a usage of which the parties knew or ought to have known and which in international trade is widely known to, and regularly observed by, parties to contracts of the type involved in the particular trade concerned.

##### Article 10

For the purposes of this Convention:
(a) if a party has more than one place of business, the place of business is that which has the closest relationship to the contract and its performance, having regard to the circumstances known to or contemplated by the parties at any time before or at the conclusion of the contract;
(b) if a party does not have a place of business, reference is to be made to his habitual residence.

##### Article 11

A contract of sale need not be concluded in or evidence by writing and is not subject to any other requirement as to form. It may be proved by any means, including witnesses.

##### Article 12

Any provision of article 11, article 29 or Part II of this Convention that allows a contract of sale or its modification or termination by agreement or any offer, acceptance or other indication of intention to be made in any form other than in writing does not apply where any party has his place of business in a Contracting State which has made a declaration under article 96 of this Convention. The parties may not derogate from or vary the effect of this article.

##### Article 13

For the purposes of this Convention "writing" includes telegram and telex.

### PART II

### FORMATION OF THE CONTRACT

##### Article 14

(1) A proposal for concluding a contract addressed to one or more specific persons constitutes an offer if it is sufficiently definite and indicates the intention of the offeror to be bound in case of acceptance. A proposal is sufficiently definite if it indicates the goods and expressly or implicitly fixes or makes provision for determining the quantity and the price.

(2) A proposal other than one addressed to one or more specific persons is to be considered merely as an invitation to make offers, unless the contrary is clearly indicated by the person making the proposal.

##### Article 15

(1) An offer becomes effective when it reaches the offeree.

(2) An offer, even if it is irrevocable, may be withdrawn if the withdrawal reaches the offeree before or at the same time as the offer.

##### Article 16

(1) Until a contract is concluded an offer may be revoked if the revocation reaches the offeree before he has dispatched an acceptance.

(2) However, an offer cannot be revoked:
(a) if it indicates, whether by stating a fixed time for acceptance or otherwise, that it is irrevocable; or
(b) if it was reasonable for the offeree to rely on the offer as being irrevocable and the offeree has acted in reliance on the offer.

##### Article 17

An offer, even if it is irrevocable, is terminated when a rejection reaches the offeror.

##### Article 18

(1) A statement made by or other conduct of the offeree indicating assent to an offer is an acceptance. Silence or inactivity does not in itself amount to acceptance.

(2) An acceptance of an offer becomes effective at the moment the indication of assent reaches the offeror. An acceptance is not effective if the indication of assent does not reach the offeror within the time he has fixed or, if no time is fixed, within a reasonable time, due account being taken of the circumstances of the transaction, including the rapidity of the means of communication employed by the offeror. An oral offer must be accepted immediately unless the circumstances indicate otherwise.

(3) However, if, by virtue of the offer or as a result of practices which the parties have established between themselves or of usage, the offeree may indicate assent by performing an act, such as one relating to the dispatch of the goods or payment of the price, without notice to the offeror, the acceptance is effective at the moment the act is performed, provided that the act is performed within the period of time laid down in the preceding paragraph.

EXHIBIT      A

ORIGINAL

IC-29

### Article 19
(1) A reply to an offer which purports to be an acceptance but contains additions, limitations or other modifications is a rejection of the offer and constitutes a counter-offer.

(2) However, a reply to an offer which purports to be an acceptance but contains additional or different terms which do not materially alter the terms of the offer constitutes an acceptance, unless the offeror, without undue delay, objects orally to the discrepancy or dispatches a notice to that effect. If he does not so object, the terms of the contract are the terms of the offer with the modificatons contained in the acceptance.

(3) Additional or different terms relating, among other things, to the price, payment, quality and quantity of the goods, place and time of delivery, extent of one party's liability to the other or the settlement of disputes are considered to alter the terms of the offer materially.

### Article 20
(1) A period of time for acceptance fixed by the offeror in a telegram or a letter begins to run from the moment the telegram is handed in for dispatch or from the date shown on the letter or, if no such date is shown, from the date shown on the envelope. A period of time for acceptance fixed by the offeror by telephone, telex or other means of instantaneous communication, begins to run from the moment that the offer reaches the offeree.

(2) Official holidays or non-business days occurring during the period for acceptance are included in calculating the period. However, if a notice of acceptance cannot be delivered at the address of the offeror on the last day of the period because that day falls on an official holiday or a non-business day at the place of business of the offeror, the period is extended until the first business day which follows.

### Article 21
(1) A late acceptance is nevertheless effective as an acceptance if without delay the offeror orally so informs the offeree or dispatches a notice to that effect.

(2) If a letter or other writing containing a late acceptance shows that it has been sent in such circumstances that if its transmission had been normal it would have reached the offeror in due time, the late acceptance is effective as an acceptance unless, without delay, the offeror orally informs the offeree that he considers his offer as having lapsed or dispatches a notice to that effect.

### Article 22
An acceptance may be withdrawn if the withdrawal reaches the offeror before or at the same time as the acceptance would have become effective.

### Article 23
A contract is concluded at the moment when an acceptance of an offer becomes effective in accordance with the provisions of this Convention.

### Article 24
For the purposes of this Part of the Convention, an offer, declaration of acceptance or any other indication of intention "reaches" the addressee when it is made orally to him or delivered by any other means to him personally, to his place of business or mailing address or, if he does not have a place of business or mailing address, to his habitual residence.

## PART III

## SALE OF GOODS

### Chapter I

### GENERAL PROVISIONS

### Article 25
A breach of contract committed by one of the parties is fundamental if it results in such detriment to the other party as substantially to deprive him of what he is entitled to expect under the contract, unless the party in breach did not foresee and a reasonable person of the same kind in the same circumstances would not have foreseen such a result.

### Article 26
A declaration of avoidance of the contract is effective only if made by notice to the other party.

### Article 27
Unless otherwise expressly provided in this Part of the Convention, if any notice, request or other communication is given or made by a party in accordance with this Part and by means appropriate in the circumstances, a delay or error in the transmission of the communication or its failure to arrive does not deprive that party of the right to rely on the communication.

### Article 28
If, in accordance with the provisions of this Convention, one party is entitled to require performance of any obligation by the other party, a court is not bound to enter a judgement for specific performance unless the court would do so under its own law in respect of similar contracts of sale not governed by this Convention.

### Article 29
(1) A contract may be modified or terminated by the mere agreement of the parties.

(2) A contract in writing which contains a provision requiring any modification or termination by agreement to be in writing may not be otherwise modified or terminated by agreement. However, a party may be precluded by his conduct from asserting such a provision to the extent that the other party has relied on that conduct.

### Chapter II

### OBLIGATIONS OF THE SELLER

### Article 30
The seller must deliver the goods, hand over any documents relating to them and transfer the property in the goods, as required by the contract and this Convention.

Section I. *Delivery of the goods and handing over of documents.*

### Article 31
If the seller is not bound to deliver the goods at any other particular place, his obligation to deliver consists:
(a) if the contract of sale involves carriage of the goods—in handing the goods over to the first carrier for transmission to the buyer;
(b) if, in cases not within the preceding subparagraph, the contract relates to specific goods, or unidentified goods to be drawn from a specific stock or to be manufactured or produced, and at the time of the conclusion of the contract the parties knew that the goods were at, or were to be manufactured or produced at, a particular place—in placing the goods at the buyer's disposal at that place;
(c) in other cases—in placing the goods at the buyer's disposal at the place where the seller had his place of business at the time of the conclusion of the contract.

### Article 32
(1) If the seller, in accordance with the contract or this Convention, hands the goods over to a carrier and if the goods are not clearly identified to the contract by markings on the goods, by shipping documents or otherwise, the seller must give the buyer notice of the consignment specifying the goods.

(2) If the seller is bound to arrange for carriage of the goods, he must make such contracts as are necessary for carriage to the place fixed by means of transportation appropriate in the circumstances and according to the usual terms for such transportation.

(3) If the seller is not bound to effect insurance in respect of the carriage of the goods, he must, at the buyer's request, provide him with all available information necessary to enable him to effect such insurance.

### Article 33
The seller must deliver the goods:
(a) if a date is fixed by or determinable from the contract, on that date;
(b) if a period of time is fixed by or determinable from the contract, at any time within that period unless circumstances indicate that the buyer is to choose a date; or
(c) in any other case, within a reasonable time after the conclusion of the contract.

### Article 34
If the seller is bound to hand over documents relating to the goods, he must hand them over at the time and place and in the form required by the contract. If the seller has handed over documents before that time, he may, up to that time, cure any lack of conformity in the documents, if the exercise of this right does not cause the buyer unreasonable inconvenience or unreasonable expense. However, the buyer retains any right to claim damages as provided for in this Convention.

Section II. *Conformity of the goods and third party claims*

### Article 35
(1) The seller must deliver goods which are of the quantity, quality and description required by the contract and which are contained or packaged in the manner required by the contract.

(2) Except where the parties have agreed otherwise, the goods do not conform with the contract unless they:
(a) are fit for the purposes for which goods of the same description would ordinarily be used;
(b) are fit for any particular purpose expressly or impliedly made known to the seller at the time of the conclusion of the contract, except where the circumstances show that the buyer did not rely, or that it was unreasonable for him to rely, on the seller's skill and judgement;
(c) possess the qualities of goods which the seller has held out to the buyer as a sample or model;
(d) are contained or packaged in the manner usual for such goods or, where there is no such manner, in a manner adequate to preserve and protect the goods.

(3) The seller is not liable under subparagraphs (a) to (d) of the preceding paragraph for any lack of conformity of the goods if at the time of the conclusion of the contract the buyer knew or could not have been unaware of such lack of conformity.

### Article 36
(1) The seller is liable in accordance with the contract and this Convention for any lack of conformity which exists at the time when the risk passes to the buyer, even though the lack of conformity becomes apparent only after that time.

(2) The seller is also liable for any lack of conformity which occurs after the time indicated in the preceding paragraph and which is due to a breach of any of his obligations, including a breach of any guarantee that for a period of time the goods will remain fit for their ordinary purpose or for some particular purpose or will retain specified qualities or characteristics.

### Article 37
If the seller has delivered goods before the date for delivery, he may, up to that date, deliver any missing part or make up any deficiency in the quantity of the goods delivered, or deliver goods in replacement of any non-conforming goods delivered or remedy any lack of conformity in the goods delivered, provided that the exercise of this right does not cause the buyer unreasonable inconvenience or unreasonable expense. However, the buyer retains any right to claim damages as provided for in this Convention.

### Article 38
(1) The buyer must examine the goods, or cause them to be examined, within as short a period as is practicable in the circumstances.

(2) If the contract involves carriage of the goods, examination may be deferred until after the goods have arrived at their destination.

(3) If the goods are redirected in transit or redispatched by the buyer without a reasonable opportunity for examination by him and at the time of the conclusion of the contract the seller knew or ought to have known of the possibility of such redirection or redispatch, examination may be deferred until after the goods have arrived at the new destination.

EXHIBIT   A     ORIGINAL

#### Article 39

(1) The buyer loses the right to rely on a lack of conformity of the goods if he does not give notice to the seller specifying the nature of the lack of conformity within a reasonable time after he has discovered it or ought to have discovered it.

(2) In any event, the buyer loses the right to rely on a lack of conformity of the goods if he does not give the seller notice thereof at the latest within a period of two years from the date on which the goods were actually handed over to the buyer, unless this time-limit is inconsistent with a contractual period of guarantee.

#### Article 40

The seller is not entitled to rely on the provisions of articles 38 and 39 if the lack of conformity relates to facts of which he knew or could not have been unaware and which he did not disclose to the buyer.

#### Article 41

The seller must deliver goods which are free from any right or claim of a third party, unless the buyer agreed to take the goods subject to that right or claim. However, if such right or claim is based on industrial property or other intellectual property, the seller's obligation is governed by article 42.

#### Article 42

(1) The seller must deliver goods which are free from any right or claim of a third party based on industrial property or other intellectual property, of which at the time of the conclusion of the contract the seller knew or could not have been unaware, provided that the right or claim is based on industrial property or other intellectual property:
(a) under the law of the State where the goods will be resold or otherwise used, if it was contemplated by the parties at the time of the conclusion of the contract that the goods would be resold or otherwise used in that State; or
(b) in any other case, under the law of the State where the buyer has his place of business.

(2) The obligation of the seller under the preceding paragraph does not extend to cases where:
(a) at the time of the conclusion of the contract the buyer knew or could not have been unaware of the right or claim; or
(b) the right or claim results from the seller's compliance with technical drawings, designs, formulae or other such specifications furnished by the buyer.

#### Article 43

(1) The buyer loses the right to rely on the provisions of article 41 or article 42 if he does not give notice to the seller specifying the nature of the right or claim of the third party within a reasonable time after he has become aware or ought to have become aware of the right or claim.

(2) The seller is not entitled to rely on the provisions of the preceding paragraph if he knew of the right or claim of the third party and the nature of it.

#### Article 44

Notwithstanding the provisions of paragraph (1) of article 39 and paragraph (1) of article 43, the buyer may reduce the price in accordance with article 50 or claim damages, except for loss of profit, if he has a reasonable excuse for his failure to give the required notice.

### Section III. *Remedies for breach of contract by the seller*

#### Article 45

(1) If the seller fails to perform any of his obligations under the contract or this Convention, the buyer may:
(a) exercise the rights provided in articles 46 to 52;
(b) claim damages as provided in articles 74 to 77.

(2) The buyer is not deprived of any right he may have to claim damages by exercising his right to other remedies.

(3) No period of grace may be granted to the seller by a court or arbitral tribunal when the buyer resorts to a remedy for breach of contract.

#### Article 46

(1) The buyer may require performance by the seller of his obligations unless the buyer has resorted to a remedy which is inconsistent with this requirement.

(2) If the goods do not conform with the contract, the buyer may require delivery of substitute goods only if the lack of conformity constitutes a fundamental breach of contract and a request for substitute goods is made either in conjunction with notice given under article 39 or within a reasonable time thereafter.

(3) If the goods do not conform with the contract, the buyer may require the seller to remedy the lack of conformity by repair, unless this is unreasonable having regard to all the circumstances. A request for repair must be made either in conjunction with notice given under article 39 or within a reasonable time thereafter.

#### Article 47

(1) The buyer may fix an additional period of time of reasonable length for performance by the seller of his obligations.

(2) Unless the buyer has received notice from the seller that he will not perform within the period so fixed, the buyer may not, during that period, resort to any remedy for breach of contract. However, the buyer is not deprived thereby of any right he may have to claim damages for delay in performance.

#### Article 48

(1) Subject to article 49, the seller may, even after the date for delivery, remedy at his own expense any failure to perform his obligations, if he can do so without unreasonable delay and without causing the buyer unreasonable inconvenience or uncertainty of reimbursement by the seller of expenses advanced by the buyer. However, the buyer retains any right to claim damages as provided for in this Convention.

(2) If the seller requests the buyer to make known whether he will accept performance and the buyer does not comply with the request within a reasonable time, the seller may perform within the time indicated in his request. The buyer may not, during that period of time, resort to any remedy which is inconsistent with performance by the seller.

(3) A notice by the seller that he will perform within a specified period of time is assumed to include a request, under the preceding paragraph, that the buyer make known his decision.

(4) A request or notice by the seller under paragraph (2) or (3) of this article is not effective unless received by the buyer.

#### Article 49

(1) The buyer may declare the contract avoided:
(a) if the failure by the seller to perform any of his obligations under the contract or this Convention amounts to a fundamental breach of contract; or
(b) in case of non-delivery, if the seller does not deliver the goods within the additional period of time fixed by the buyer in accordance with paragraph (1) of article 47 or declares that he will not deliver within the period so fixed.

(2) However, in cases where the seller has delivered the goods, the buyer loses the right to declare the contract avoided unless he does so:
(a) in respect of late delivery, within a reasonable time after he has become aware that delivery has been made;
(b) in respect of any breach other than late delivery, within a reasonable time:
(i) after he knew or ought to have known of the breach;
(ii) after the expiration of any additional period of time fixed by the buyer in accordance with paragraph (1) of article 47, or after the seller has declared that he will not perform his obligations within such an additional period; or
(iii) after the expiration of any additional period of time indicated by the seller in accordance with paragraph (3) of article 48, or after the buyer has declared that he will not accept performance.

#### Article 50

If the goods do not conform with the contract and whether or not the price has already been paid, the buyer may reduce the price in the same proportion as the value that the goods actually delivered had at the time of the delivery bears to the value that conforming goods would have had at that time. However, if the seller remedies any failure to perform his obligations in accordance with article 37 or article 48 or if the buyer refuses to accept performance by the seller in accordance with those articles, the buyer may not reduce the price.

#### Article 51

(1) If the seller delivers only a part of the goods or if only a part of the goods delivered is in conformity with the contract, articles 46 to 50 apply in respect of the part which is missing or which does not conform.

(2) The buyer may declare the contract avoided in its entirety only if the failure to make delivery completely or in conformity with the contract amounts to a fundamental breach of contract.

#### Article 52

(1) If the seller delivers the goods before the date fixed, the buyer may take delivery or refuse to take delivery.

(2) If the seller delivers a quantity of goods greater than that provided for in the contract, the buyer may take delivery or refuse to take delivery of the excess quantity. If the buyer takes delivery of all or part of the excess quantity, he must pay for it at the contract rate.

### Chapter III

### OBLIGATIONS OF THE BUYER

#### Article 53

The buyer must pay the price for the goods and take delivery of them as required by the contract and this Convention.

### Section I. *Payment of the price*

#### Article 54

The buyer's obligation to pay the price includes taking such steps and complying with such formalities as may be required under the contract or any laws and regulations to enable payment to be made.

#### Article 55

Where a contract has been validly concluded but does not expressly or implicitly fix or make provision for determining the price, the parties are considered, in the absence of any indication to the contrary, to have impliedly made reference to the price generally charged at the time of the conclusion of the contract for such goods sold under comparable circumstances in the trade concerned.

#### Article 56

If the price is fixed according to the weight of the goods, in case of doubt it is to be determined by the net weight.

#### Article 57

(1) If the buyer is not bound to pay the price at any other particular place, he must pay it to the seller:
(a) at the seller's place of business; or
(b) if the payment is to be made against the handing over of the goods or of documents, at the place where the handing over takes place.

(2) The seller must bear any increase in the expenses incidental to payment which is caused by a change in his place of business subsequent to the conclusion of the contract.

#### Article 58

(1) If the buyer is not bound to pay the price at any other specific time, he must pay it when the seller places either the goods or documents controlling their disposition at the buyer's disposal in accordance with the contract and this Convention. The seller may make such payment a condition for handing over the goods or documents.

(2) If the contract involves carriage of the goods, the seller may dispatch the goods on terms whereby the goods, or documents controlling their disposition, will not be handed over to the buyer except against payment of the price.

(3) The buyer is not bound to pay the price until he has had an opportunity to examine the goods, unless the procedures for delivery or payment agreed upon by the parties are inconsistent with his having such an opportunity.

EXHIBIT   A   ORIGINAL

### Article 59

The buyer must pay the price on the date fixed by or determinable from the contract and this Convention without the need for any request or compliance with any formality on the part of the seller.

#### Section II. *Taking delivery*

### Article 60

The buyer's obligation to take delivery consists:

(a) in doing all the acts which could reasonably be expected of him in order to enable the seller to make delivery; and

(b) in taking over the goods.

#### Section III. *Remedies for breach of contract by the buyer*

### Article 61

(1) If the buyer fails to perform any of his obligations under the contract or this Convention, the seller may:

(a) exercise the rights provided in articles 62 to 65;

(b) claim damages as provided in articles 74 to 77.

(2) The seller is not deprived of any right he may have to claim damages by exercising his right to other remedies.

(3) No period of grace may be granted to the buyer by a court or arbitral tribunal when the seller resorts to a remedy for breach of contract.

### Article 62

The seller may require the buyer to pay the price, take delivery or perform his other obligations, unless the seller has resorted to a remedy which is inconsistent with this requirement.

### Article 63

(1) The seller may fix an additional period of time of reasonable length for performance by the buyer of his obligations.

(2) Unless the seller has received notice from the buyer that he will not perform within the period so fixed, the seller may not, during that period, resort to any remedy for breach of contract. However, the seller is not deprived thereby of any right he may have to claim damages for delay in performance.

### Article 64

(1) The seller may declare the contract avoided:

(a) if the failure by the buyer to perform any of his obligations under the contract or this Convention amounts to a fundamental breach of contract; or

(b) if the buyer does not, within the additional period of time fixed by the seller in accordance with paragraph (1) of article 63, perform his obligation to pay the price or take delivery of the goods, or if he declares that he will not do so within the period so fixed.

(2) However, in cases where the buyer has paid the price, the seller loses the right to declare the contract avoided unless he does so:

(a) in respect of late performance by the buyer, before the seller has become aware that performance has been rendered; or

(b) in respect of any breach other than late performance by the buyer, within a reasonable time:

(i) after the seller knew or ought to have known of the breach; or

(ii) after the expiration of any additional period of time fixed by the seller in accordance with paragraph (1) of article 63, or after the buyer has declared that he will not perform his obligations within such an additional period.

### Article 65

(1) If under the contract the buyer is to specify the form, measurement or other features of the goods and he fails to make such specification either on the date agreed upon or within a reasonable time after receipt of a request from the seller, the seller may, without prejudice to any other rights he may have, make the specification himself in accordance with the requirements of the buyer that may be known to him.

(2) If the seller makes the specification himself, he must inform the buyer of the details thereof and must fix a reasonable time within which the buyer may make a different specification. If, after receipt of such a communication, the buyer fails to do so within the time so fixed, the specification made by the seller is binding.

#### Chapter IV

#### PASSING OF RISK

### Article 66

Loss of or damage to the goods after the risk has passed to the buyer does not discharge him from his obligation to pay the price, unless the loss or damage is due to an act or omission of the seller.

### Article 67

(1) If the contract of sale involves carriage of the goods and the seller is not bound to hand them over at a particular place, the risk passes to the buyer when the goods are handed over to the first carrier for transmission to the buyer in accordance with the contract of sale. If the seller is bound to hand the goods over to a carrier at a particular place, the risk does not pass to the buyer until the goods are handed over to the carrier at that place. The fact that the seller is authorized to retain documents controlling the disposition of the goods does not affect the passage of the risk.

(2) Nevertheless, the risk does not pass to the buyer until the goods are clearly identified to the contract, whether by markings on the goods, by shipping documents, by notice given to the buyer or otherwise.

### Article 68

The risk in respect of goods sold in transit passes to the buyer from the time of the conclusion of the contract. However, if the circumstances so indicate, the risk is assumed by the buyer from the time the goods were handed over to the carrier who issued the documents embodying the contract of carriage. Nevertheless, if at the time of the conclusion of the contract of sale the seller knew or ought to have known that the goods had been lost or damaged and did not disclose this to the buyer, the loss or damage is at the risk of the seller.

### Article 69

(1) In cases not within articles 67 and 68, the risk passes to the buyer when he takes over the goods or, if he does not do so in due time, from the time when the goods are placed at his disposal and he commits a breach of contract by failing to take delivery.

(2) However, if the buyer is bound to take over the goods at a place other than a place of business of the seller, the risk passes when delivery is due and the buyer is aware of the fact that the goods are placed at his disposal at that place.

(3) If the contract relates to goods not then identified, the goods are considered not to be placed at the disposal of the buyer until they are clearly identified to the contract.

### Article 70

If the seller has committed a fundamental breach of contract, articles 67, 68 and 69 do not impair the remedies available to the buyer on account of the breach.

#### Chapter V

#### PROVISIONS COMMON TO THE OBLIGATIONS OF THE SELLER AND OF THE BUYER

#### Section I. *Anticipatory breach and instalment contracts*

### Article 71

(1) A party may suspend the performance of his obligations if, after the conclusion of the contract, it becomes apparent that the other party will not perform a substantial part of his obligations as a result of:

(a) a serious deficiency in his ability to perform or in his creditworthiness; or

(b) his conduct in preparing to perform or in performing the contract.

(2) If the seller has already dispatched the goods before the grounds described in the preceding paragraph become evident, he may prevent the handing over of the goods to the buyer even though the buyer holds a document which entitles him to obtain them. The present paragraph relates only to the rights in the goods as between the buyer and the seller.

(3) A party suspending performance, whether before or after dispatch of the goods, must immediately give notice of the suspension to the other party and must continue with performance if the other party provides adequate assurance of his performance.

### Article 72

(1) If prior to the date for performance of the contract it is clear that one of the parties will commit a fundamental breach of contract, the other party may declare the contract avoided.

(2) If time allows, the party intending to declare the contract avoided must give reasonable notice to the other party in order to permit him to provide adequate assurance of his performance.

(3) The requirements of the preceding paragraph do not apply if the other party has declared that he will not perform his obligations.

### Article 73

(1) In the case of a contract for delivery of goods by instalments, if the failure of one party to perform any of his obligations in respect of any instalment constitutes a fundamental breach of contract with respect to that instalment, the other party may declare the contract avoided with respect to that instalment.

(2) If one party's failure to perform any of his obligations in respect of any instalment gives the other party good grounds to conclude that a fundamental breach of contract will occur with respect to future instalments, he may declare the contract avoided for the future, provided that he does so within a reasonable time.

(3) A buyer who declares the contract avoided in respect of any delivery may, at the same time, declare it avoided in respect of deliveries already made or of future deliveries if, by reason of their interdependence, those deliveries could not be used for the purpose contemplated by the parties at the time of the conclusion of the contract.

#### Section II. *Damages*

### Article 74

Damages for breach of contract by one party consist of a sum equal to the loss, including loss of profit, suffered by the other party as a consequence of the breach. Such damages may not exceed the loss which the party in breach foresaw or ought to have foreseen at the time of the conclusion of the contract, in the light of the facts and matters of which he then knew or ought to have known, as a possible consequence of the breach of contract.

### Article 75

If the contract is avoided and if, in a reasonable manner and within a reasonable time after avoidance, the buyer has bought goods in replacement or the seller has resold the goods, the party claiming damages may recover the difference between the contract price and the price in the substitute transaction as well as any further damages recoverable under article 74.

### Article 76

(1) If the contract is avoided and there is a current price for the goods, the party claiming damages may, if he has not made a purchase or resale under article 75, recover the difference between the price fixed by the contract and the current price at the time of avoidance as well as any further damages recoverable under article 74. If, however, the party claiming damages has avoided the contract after taking over the goods, the current price at the time of such taking over shall be applied instead of the current price at the time of avoidance.

(2) For the purposes of the preceding paragraph, the current price is the price prevailing at the place where delivery of the goods should have been made or, if there is no current price at that place, the price at such other place as serves as a reasonable substitute, making due allowance for differences in the cost of transporting the goods.

### Article 77

A party who relies on a breach of contract must take such measures as are reasonable in the circumstances to mitigate the loss, including loss of profit, resulting from the breach. If he fails to take such measures, the party in breach may claim a reduction in the damages in the amount by which the loss should have been mitigated.

EXHIBIT   A

ORIGINAL

### Section III. *Interest*

#### Article 78

If a party fails to pay the price or any other sum that is in arrears, the other party is entitled to interest on it, without prejudice to any claim for damages recoverable under article 74.

### Section IV. *Exemptions*

#### Article 79

(1) A party is not liable for a failure to perform any of his obligations if he proves that the failure was due to an impediment beyond his control and that he could not reasonably be expected to have taken the impediment into account at the time of the conclusion of the contract or to have avoided or overcome it, or its consequences.

(2) If the party's failure is due to the failure by a third person whom he has engaged to perform the whole or a part of the contract, that party is exempt from liability only if:

(a) he is exempt under the preceding paragraph; and

(b) the person whom he has so engaged would be so exempt if the provisions of that paragraph were applied to him.

(3) The exemption provided by this article has effect for the period during which the impediment exists.

(4) The party who fails to perform must give notice to the other party of the impediment and its effect on his ability to perform. If the notice is not received by the other party within a reasonable time after the party who fails to perform knew or ought to have known of the impediment, he is liable for damages resulting from such non-receipt.

(5) Nothing in this article prevents either party from exercising any right other than to claim damages under this Convention.

#### Article 80

A party may not rely on a failure of the other party to perform, to the extent that such failure was caused by the first party's act or omission.

### Section V. *Effects of avoidance*

#### Article 81

(1) Avoidance of the contract releases both parties from their obligations under it, subject to any damages which may be due. Avoidance does not affect any provision of the contract for the settlement of disputes or any other provision of the contract governing the rights and obligations of the parties consequent upon the avoidance of the contract.

(2) A party who has performed the contract either wholly or in part may claim restitution from the other party of whatever the first party has supplied or paid under the contract. If both parties are bound to make restitution, they must do so concurrently.

#### Article 82

(1) The buyer loses the right to declare the contract avoided or to require the seller to deliver substitute goods if it is impossible for him to make restitution of the goods substantially in the condition in which he received them.

(2) The preceding paragraph does not apply:

(a) if the impossibility of making restitution of the goods or of making restitution of the goods substantially in the condition in which the buyer received them is not due to his act or omission;

(b) if the goods or part of the goods have perished or deteriorated as a result of the examination provided for in article 38; or

(c) if the goods or part of the goods have been sold in the normal course of business or have been consumed or transformed by the buyer in the course of normal use before he discoverd or ought to have discovered the lack of conformity.

#### Article 83

A buyer who has lost the right to declare the contract avoided or to require the seller to deliver substitute goods in accordance with article 82 retains all other remedies under the contract and this Convention.

#### Article 84

(1) If the seller is bound to refund the price, he must also pay interest on it, from the date on which the price was paid.

(2) The buyer must account to the seller for all benefits which he has derived from the goods or part of them:

(a) if he must make restitution of the goods or part of them; or

(b) if it is impossible for him to make restitution of all or part of the goods or to make restitution of all or part of the goods substantially in the condition in which he received them, but he has nevertheless declared the contract avoided or required the seller to deliver substitute goods.

### Section VI. *Preservation of the goods*

#### Article 85

If the buyer is in delay in taking delivery of the goods or, where payment of the price and delivery of the goods are to be made concurrently, if he fails to pay the price, and the seller is either in possession of the goods or otherwise able to control their disposition, the seller must take such steps as are reasonable in the circumstances to preserve them. He is entitled to retain them until he has been reimbursed his reasonable expenses by the buyer.

#### Article 86

(1) If the buyer has received the goods and intends to exercise any right under the contract or this Convention to reject them, he must take such steps to preserve them as are reasonable in the circumstances. He is entitled to retain them until he has been reimbursed his reasonable expenses by the seller.

(2) If goods dispatched to the buyer have been placed at his disposal at their destination and he exercises the right to reject them, he must take possession of them on behalf of the seller, provided that this can be done without payment of the price and without unreasonable inconvenience or unreasonable expense. This provision does not apply if the seller or a person authorized to take charge of the goods on his behalf is

present at the destination. If the buyer takes possession of the goods under this paragraph, his rights and obligations are governed by the preceding paragraph.

#### Article 87

A party who is bound to take steps to preserve the goods may deposit them in a warehouse of a third person at the expense of the other party provided that the expense incurred is not unreasonable.

#### Article 88

(1) A party who is bound to preserve the goods in accordance with article 85 or 86 may sell them by any appropriate means if there has been an unreasonable delay by the other party in taking possession of the goods or in taking them back or in paying the price or the cost of preservation, provided that reasonable notice of the intention to sell has been given to the other party.

(2) If the goods are subject to rapid deterioration or their preservation would involve unreasonable expense, a party who is bound to preserve the goods in accordance with article 85 or 86 must take reasonable measures to sell them. To the extent possible he must give notice to the other party of his intention to sell.

(3) A party selling the goods has the right to retain out of the proceeds of sale an amount equal to the reasonable expenses of preserving the goods and of selling them. He must account to the other party for the balance.

## PART IV

## FINAL PROVISIONS

#### Article 89

The Secretary-General of the United Nations is hereby designated as the depositary for this Convention.

#### Article 90

This Convention does not prevail over any international agreement which has already been or may be entered into and which contains provisions concerning the matters governed by this Convention, provided that the parties have their places of business in States parties to such agreement.

#### Article 91

(1) This Convention is open for signature at the concluding meeting of the United Nations Conference on Contracts for the International Sale of Goods and will remain open for signature by all States at the Headquarters of the United Nations, New York until 30 September 1981.

(2) This Convention is subject to ratification, acceptance or approval by the signatory States.

(3) This Convention is open for accession by all States which are not signatory States as from the date it is open for signature.

(4) Instruments of ratification, acceptance, approval and accession are to be deposited with the Secretary-General of the United Nations.

#### Article 92

(1) A Contracting State may declare at the time of signature, ratification, acceptance, approval or accession that it will not be bound by Part II of this Convention or that it will not be bound by Part III of this Convention.

(2) A Contracting State which makes a declaration in accordance with the preceding paragraph in respect of Part II or Part III of this Convention is not to be considered a Contracting State within paragraph (1) of article 1 of this Convention in respect of matters governed by the Part to which the declaration applies.

#### Article 93

(1) If a Contracting State has two or more territorial units in which, according to its constitution, different systems of law are applicable in relation to the matters dealt with in this Convention, it may, at the time of signature, ratification, acceptance, approval or accession, declare that this Convention is to extend to all its territorial units or only to one or more of them, and may amend its declaration by submitting another declaration at any time.

(2) These declarations are to be notified to the depositary and are to state expressly the territorial units to which the Convention extends.

(3) If, by virtue of a declaration under this article, this Convention extends to one or more but not all of the territorial units of a Contracting State, and if the place of business of a party is located in that State, this place of business, for the purposes of this Convention, is considered not to be in a Contracting State, unless it is in a territorial unit to which the Convention extends.

(4) If a Contracting State makes no declaration under paragraph (1) of this article, the Convention is to extend to all territorial units of that State.

#### Article 94

(1) Two or more Contracting States which have the same or closely related legal rules on matters governed by this Convention may at any time declare that the Convention is not to apply to contracts of sale or to their formation where the parties have their places of business in those States. Such declarations may be made jointly or by reciprocal unilateral declarations.

(2) A Contracting State which has the same or closely related legal rules on matters governed by this Convention as one or more non-Contracting States may at any time declare that the Convention is not to apply to contracts of sale or to their formation where the parties have their places of business in those States.

(3) If a State which is the object of a declaration under the preceding paragraph subsequently becomes a Contracting State, the declaration made will, as from the date on which the Convention enters into force in respect of the new Contracting State, have the effect of a declaration made under paragraph (1), provided that the new Contracting State joins in such declaration or makes a reciprocal unilateral declaration.

#### Article 95

Any State may declare at the time of the deposit of its instrument of ratification, acceptance, approval or accession that it will not be bound by subparagraph (1)(b) of article 1 of this Convention.

MARTINDALE-HUBBELL LAW DIGEST 1995

### Article 96

A Contracting State whose legislation requires contracts of sale to be concluded in or evidenced by writing may at any time make a declaration in accordance with article 12 that any provision of article 11, article 29, or Part II of this Convention, that allows a contract of sale or its modification or termination by agreement or any offer, acceptance, or other indication of intention to be made in any form other than in writing, does not apply where any party has his place of business in that State.

### Article 97

(1) Declarations made under this Convention at the time of signature are subject to confirmation under ratification, acceptance or approval.

(2) Declarations and confirmations of declarations are to be in writing and be formally notified to the depositary.

(3) A declaration takes effect simultaneously with the entry into force of this Convention in respect of the State concerned. However, a declaration of which the depositary receives formal notification after such entry into force takes effect on the first day of the month following the expiration of six months after the date of its receipt by the depositary. Reciprocal unilateral declarations under article 94 take effect on the first day of the month following the expiration of six months after the receipt of the latest declaration by the depositary.

(4) Any State which makes a declaration under this Convention may withdraw it at any time by a formal notification in writing addressed to the depositary. Such withdrawal is to take effect on the first day of the month following the expiration of six months after the date of the receipt of the notification by the depositary.

(5) A withdrawal of a declaration made under article 94 renders inoperative, as from the date on which the withdrawal takes effect, any reciprocal declaration made by another State under that article.

### Article 98

No reservations are permitted except those expressly authorized in this Convention.

### Article 99

(1) This Convention enters into force, subject to the provisions of paragraph (6) of this article, on the first day of the month following the expiration of twelve months after the date of deposit of the tenth instrument of ratification, acceptance, approval or accession, including an instrument which contains a declaration made under article 92.

(2) When a State ratifies, accepts, approves or accedes to this Convention after the deposit of the tenth instrument of ratification, acceptance, approval or accession, this Convention, with the exception of the Part excluded, enters into force in respect of that State, subject to the provisions of paragraph (6) of this article, on the first day of the month following the expiration of twelve months after the date of the deposit of its instrument of ratification, acceptance, approval or accession.

(3) A State which ratifies, accepts, approves or accedes to this Convention and is a party to either or both the Convention relating to a Uniform Law on the Formation of Contracts for the International Sale of Goods done at The Hague on 1 July 1964 (1964 Hague Formation Convention) and the Convention relating to a Uniform Law on the International Sale of Goods done at The Hague on 1 July 1964 (1964 Hague Sales Convention) shall at the same time denounce, as the case may be, either or both the 1964 Hague Sales Convention and the 1964 Hague Formation Convention by notifying the Government of the Netherlands to that effect.

(4) A State party to the 1964 Hague Sales Convention which ratifies, accepts, approves or accedes to the present Convention and declares or has declared under article 92 that it will not be bound by Part II of this Convention shall at the time of ratification, acceptance, approval or accession denounce the 1964 Hague Sales Convention by notifying the Government of the Netherlands to that effect.

(5) A State party to the 1964 Hague Formation Convention which ratifies, accepts, approves or accedes to the present Convention and declares or has declared under article 92 that it will not be bound by Part III of this Convention shall at the time of ratification, acceptance, approval or accession denounce the 1964 Hague Formation Convention by notifying the Government of the Netherlands to that effect.

(6) For the purpose of this article, ratifications, acceptances, approvals and accessions in respect of this Convention by States parties to the 1964 Hague Formation Convention or to the 1964 Hague Sales Convention shall not be effective until such denunciations as may be required on the part of those States in respect of the latter two Conventions have themselves become effective. The depositary of this Convention shall consult with the Government of the Netherlands, as the depositary of the 1964 Conventions, so as to ensure necessary co-ordination in this respect.

### Article 100

(1) This Convention applies to the formation of the contract only when the proposal for concluding the contract is made on or after the date when the Convention enters into force in respect of the Contracting States referred to in subparagraph (1)(a) or the Contracting State referred to in subparagraph (1)(b) of article 1.

(2) This Convention applies only to contracts concluded on or after the date when the Convention enters into force in respect of the Contracting States referred to in subparagraph (1)(a) or the Contracting State referred to in subparagraph (1)(b) of article 1.

### Article 101

(1) A Contracting State may denounce this Convention, or Part II or Part III of the Convention, by a formal notification in writing addressed to the depositary.

(2) The denunciation takes effect on the first day of the month following the expiration of twelve months after the notification is received by the depositary. Where a longer period for the denunciation to take effect is specified in the notification, the denunciation takes effect upon the expiration of such longer period after the notification is received by the depositary.

DONE at Vienna, this day of eleventh day of April\*, one thousand nine hundred and eighty, in a single original, of which the Arabic, Chinese, English, French, Russian and Spanish texts are equally authentic.

IN WITNESS WHEREOF the undersigned plenipotentiaries, being duly authorized by their respective Governments, have signed this Convention. [Signatures omitted]

\* Editor's note: Thus in U.N.-certified text.

United Nations convention ●●●●●●●ts for the international sale of goods. Done at Vienna April 11, 1980; entry into force for the United States January 1, 1988. States which are parties:

Argentina[1]
Australia[2]
Austria
Belarus[3]
Bosnia and Herzegovina
Bulgaria
Canada[3a]
Chile[4]
China[5]
Czech Republic[6]
Denmark[7]
Ecuador
Egypt
Estonia[7a]
Finland[8]
France
Georgia[8a]
Germany, Federal Republic of[9]
Guinea
Hungary[10]
Iraq
Italy
Lesotho
Mexico
Netherlands[10a]
New Zealand[10b]
Norway[11]
Romania
Russian Federation[11a]
Slovakia[11b]
Slovenia
Spain
Sweden[12]
Switzerland
Syrian Arab Republic
Uganda
Ukraine[13]
United States[14]
Yugoslavia
Zambia

[1] The instrument of accession by the Government of Argentina contains the following declaration:

(Translation) (Original: Spanish)
In accordance with articles 96 and 12 of the United Nations Convention on Contracts for the International Sale of Goods, any provision of article 11, article 29 or Part II of the Convention that allows a contract of sale or its modification or termination by agreement or any offer, acceptance or other indication of intention to be made in any form other than in writing does not apply where any party has his place of business in the Argentine Republic.

[2] The instrument of accession by the Government of Australia contains the following declaration:

(Original: English)
"The Convention shall apply to all Australian States and mainland territories and to all external territories except the territories of Christmas Island, the Cocos (Keeling) Islands and the Ashmore and Cartier Islands."

[3] The instrument of accession by the Government of [Belarus] contains the following declaration:

(Translation)(Original: Russian)
"[Belarus], in accordance with articles 12 and 96 of the Convention declares that any provision of article 11, article 29 or Part II of this Convention that allows a contract of sale or its modification or termination by agreement or any offer, acceptance or other indication of intention to be made in any form other than in writing does not apply where any party has his place of business in [Belarus]."

[3a] The instrument of accession by the Government of Canada contains the following declaration:

"The Government of Canada declares, in accordance with Article 93 of the Convention, that the Convention will extend to Alberta, British Columbia, Manitoba, New Brunswick, Newfoundland, Nova Scotia, Ontario, Prince Edward Island and the Northwest Territories."

Subsequently the Government of Canada declared that "the Convention shall also extend to Quebec and Saskatchewan" (9 April 1992) and "applies also to the Territory of the Yukon" (29 June 1992).

[4] The instrument of ratification by the Government of Chile contains the following declaration:

(Translation) (Original: Spanish)
"The State of Chile declares, in accordance with articles 12 and 96 of the Convention, that any provision of article 11, article 29 or Part II of the Convention that allows a contract of sale or its modification or termination by mutual agreement or any offer, acceptance or other indication of intention to be made in any other form than in writing, does not apply where any party has its place of business in Chile."

[5] The instrument of approval by the Government of China contains the following declaration:

(Courtesy translation) (Original: Chinese)
The People's Republic of China does not consider itself to be bound by subparagraph (b) of paragraph 1 of Article 1 and Article 11 as well as the provisions in the Convention relating to the content of Article 11.

EXHIBIT  A  ORIGINAL

6 Subject to the following declaration:

(Courtesy Translation) (Original: Czechoslovak)

"Pursuant to Article 95, the [Czech Republic] declares that it shall not consider itself bound by the provision of Article 1, paragraph 1, item b), of the Convention."

7 The instrument of ratification by the Government of Denmark was accompanied by the following declarations:

(Original: English)

"Upon ratifying the Convention, the Kingdom of Denmark declares:

1) under paragraph 1 of Article 92 that Denmark will not be bound by Part II of the Convention,

2) under paragraph 1 of Article 93 that the Convention shall not apply to the Faroe Islands and Greenland,

3) under paragraph 1 cf. paragraph 3 of Article 94 that the Convention shall not apply to contracts of sale where one of the parties has his place of business in Denmark, Finland, Norway or Sweden and the other party has his place of business in another of the said states,

4) under paragraph 2 of Article 94 that the Convention is not to apply to contracts of sale where one of the parties has his place of business in Denmark, Finland, Norway or Sweden and the other party has his place of business in Iceland".

7a The instrument of accession by the Government of Estonia contains the following declaration:

"In accordance with Articles 12 and 96 of the United Nations Convention on Contracts for the International Sale of Goods any provision of Article 11, Article 29 or Part II of the Convention that allows a contract of sale or its modification or termination by agreement or any offer, acceptance or other indication of intention to be made in any form other than in writing does not apply where any party has his place of business in the Republic of Estonia."

8 The instrument of ratification by the Government of Finland contains the following declarations:

(Original: English)

"1. With reference to Article 92, Finland will not be bound by Part II of this Convention (Formation of the Contract).

2. With reference to Article 94, in respect of Sweden in accordance with paragraph (1) and otherwise in accordance with paragraph (2) the Convention will not apply to contracts of sale where the parties have their places of business in Finland, Sweden, Denmark, Iceland or Norway."

8a In accordance with article 99(2), the Convention will enter into force for Georgia on 1 September 1995.

9 On October 3, 1990 the German Democratic Republic acceded to the Federal Republic of Germany.

The instrument of ratification by the Government of the Federal Republic of Germany contains the following declaration:

(Courtesy Translation) (Original: German)

"The Government of the Federal Republic of Germany holds the view that Parties to the Convention that have made a declaration under article 95 of the Convention are not considered Contracting States within the meaning of subparagraph (1) (b) of article 1 of the Convention. Accordingly, there is no obligation to apply—and the Federal Republic of Germany assumes no obligation to apply—this provision when the rules of private international law lead to the application of the law of a Party that has made a declaration to the effect that it will not be bound by subparagraph (1) (b) of article 1 of the Convention. Subject to this observation the Government of the Federal Republic of Germany makes no declaration under article 95 of the Convention."

In a note accompanying the instrument of ratification the Government of the Federal Republic of Germany stated that the said Convention shall also apply to Berlin (West) with effect from the date on which it enters into force for the Federal Republic of Germany.

The Federal Republic of Germany denounced, on 1 January 1990, the Conventions relating to the formation of contracts for the international sale of goods and the international sale of such goods, both done at The Hague on 1 July 1964. These denunciations shall take effect on 31 December 1990, and the present Convention will therefore enter into force for the Federal Republic of Germany on 1 January 1991, in accordance with paragraph 2 and 6 of article 99.

10 In a note accompanying its instrument of ratification, the Government of Hungary made the following declarations:

— "It [Hungary] considers the General Conditions of Delivery of Goods between Organizations of the Member Countries of the Council for Mutual Economic Assistance/GCD CMEA, 1968/1975, version of 1979/ to be subject to the provisions of article 90 of the Convention;

— It states, in accordance with articles 12 and 96 of the Convention, that any provision of article 11, article 29 or part II of the Convention that allows a contract of sale or its modification or termination by agreement or any offer, acceptance or other indication of intention to be made in any form other than in writing, does not apply where any party has his place of business in the Hungarian People's Republic."

10a For the Kingdom in Europe and Aruba.

10b In accordance with article 99(2), the Convention will enter into force for New Zealand on 1 October 1995.

11 The instrument of ratification by the Government of Norway contains the following declarations:

(Original: English)

"1. In accordance with Article 92, paragraph (1), the Government of the Kingdom of Norway declares that Norway will not be bound by Part II of this Convention. (Formation of the Contract).

2. With reference to Article 94, in respect of Finland and Sweden in accordance with paragraph (1) and otherwise in accordance with paragraph (2), the Government of the Kingdom of Norway declares that the Convention will not apply to contracts of

sale where the parties have their places of business in Norway, Denmark, Finland, Iceland or Sweden."

11a The instrument of accession by the Government of the [Russian Federation] contains the following declaration:

(Translation) (Original: Russian)

"In accordance with articles 12 and 96 of the Convention, the [Russian Federation] declares that any provision of article 11, article 29 or Part II of the Convention that allows a contract of sale or its modification or termination by agreement or any offer, acceptance or other indication of intention to be made in any form other than in writing does not apply where any party has his place of business in the [Russian Federation]."

11b Subject to the following declaration:

(Courtesy Translation) (Original: Czechoslovak)

"Pursuant to Article 95, [Slovakia] declares that it shall not consider itself bound by the provision of Article 1, paragraph 1, item b), of the Convention."

12 The instrument of ratification by the Government of Sweden contains the following declarations:

(Original: English)

"1. With reference to Article 92, Sweden will not be bound by Part II of this Convention (Formation of the Contract).

2. With reference to Article 94, in respect of Finland in accordance with paragraph (1) and otherwise in accordance with paragraph (2) the Convention will not apply to contracts of sale where the parties have their places of business in Sweden, Finland, Denmark, Iceland or Norway."

13 The instrument of accession by the Government of [Ukraine] contains the following declaration:

(Translation) (Original: Russian)

"In accordance with articles 12 and 96 of the Convention, [Ukraine] declares that any provision of article 11, article 29 or Part II of the Convention that allows a contract of sale or its modification or termination by agreement or any offer, acceptance or other indication of intention to be made in any form other than in writing does not apply where any party has his place of business in [Ukraine]."

14 The instrument of ratification by the Government of the United States contains the following declaration:

"Pursuant to article 95 the United States will not be bound by subparagraph (1)(b) of Article 1."

---

## CONVENTION ON THE LIMITATION PERIOD IN THE INTERNATIONAL SALE OF GOODS

Note: On Dec. 1, 1994, as this volume went to press, the U.S. became a party to a new Convention on the Limitation Period in the International Sale of Goods. The text of the Convention will be included in the 1996 edition of the Law Digest.

---

## CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD ABDUCTION

The States signatory to the present Convention.

Firmly convinced that the interests of children are of paramount importance in matters relating to their custody.

Desiring to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access.

Have resolved to conclude a Convention to this effect, and have agreed upon the following provisions—

### CHAPTER I

### SCOPE OF THE CONVENTION

#### Article 1

The objects of the present Convention are—

a to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and

b to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.

#### Article 2

Contracting States shall take all appropriate measures to secure within their territories the implementation of the objects of the Convention. For this purpose they shall use the most expeditious procedures available.

#### Article 3

The removal or the retention of a child is to be considered wrongful where—

a it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

b at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

The rights of custody mentioned in sub-paragraph a above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

#### Article 4

The Convention shall apply to any child who was habitually resident in a Contracting State immediately before any breach of custody or access rights. The Convention shall cease to apply when the child attains the age of 16 years.

#### Article 5

For the purposes of this Convention—

a 'rights of custody' shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence;

b 'rights of access' shall include the right to take a child for a limited period of time to a place other than the child's habitual residence.

EXHIBIT A    ORIGINAL

IC–35

# CREATIVE FOREST INDUSTRIES

(310) 923-7288
9384 SUVA • DOWNEY, CA 90240

CERTIFICATE OF ORIGIN

THE UNDERSIGNED *CREATIVE FOREST IND.* FOR *MARCOS Y MOLDURAS*
Agent-Owner                                Name and address of
*DEL PACIFICO Y/O C.J.R. FRAMES INC. 279 ZENITH ST CHULA VISTA CAL.*

SHIPPER DECLARES THAT THE FOLLOWING MENTIONED GOODS, SHIPPED ON OUR

INVOICE # *4276*                    DATED *1-31-94*

AND CONSIGNED TO *MARCOS Y MOLDURAS DEL PACIFICO Y/O C.J.R. FRAMES INC.*
Name and address of consignee
*279 ZENITH ST CHULA VISTA CAL.*

ARE A PRODUCT OF THE UNITED STATES OF AMERICA (USA)

| MARKS AND NUMBERS | NO. OF PKGS. | WEIGHT IN KILOS | |
|---|---|---|---|
| | *19 UNITS* | *21,181* | *19,658 BOARD FT. 5/4-1"C S2S RANDOM WIDTH, RANDOM LENGTH, PONDEROSA PINE, SHOPOUTS* |
| | | | WE FURTHER STATE THAT THE ABOVE INFORMATION AND QUANTITIES, VALUE, ETC. ARE TRUE AND CORRECT. |

Dated at:        Downey, Calif. U.S.A.
on the  *1-31-  94*
        Day   Date  &  Year

*Robert Fite* (FOR CREATIVE FOREST)
Signature of Owner - Agent

**EXHIBIT  B**    ORIGINAL




# CREATIVE FOREST INDUSTRIES

December 29, 1994

(310) 923-7288
9384 SUVA • DOWNEY, CA 90240

TO:  CREATIVE FOREST INDUSTRIES
9384 SUVA STREET
DOWNEY, CALIFORNIA 90240

## PERSONAL GUARANTEE

IN RETURN FOR THE EXTENSION OF CREDIT, THE UNDERSIGNED

HEREBY JOINTLY, SEVERALLY, AND PERSONALLY GUARANTEES TO

PAY AND BE RESPONSIBLE FOR PAYMENTS OF ALL AMOUNTS DUE

CREATIVE FOREST INDUSTRIES BY C.J.R. FRAMES INC. INCLUDING

COURT COSTS, COLLECTION CHARGES AND/OR ATTORNEY FEES.

THIS SHALL BE AN OPEN AND CONTINUING GUARANTEE NOTWITH-

STANDING ANY CHANGES, REMOVALS, EXTENSIONS OR THE LIKE

GRANTED BY CREATIVE FOREST.

| Print Name | Signature | Date |
|---|---|---|

| Print Name | Signature | Date |
|---|---|---|

C.J.R. FRames
279 Zenith Street
Chula Vista, California   91911

EXHIBIT   C   ORIGINAL

February 1, 1996

**INVOICE**

C.J.R. Frames
279 Zenith Street
Chula Vista, CA  91911

c/o Hampton Reload

# CREATIVE FOREST INDUSTRIES



(310) 923-7288 • FAX (310) 862-8600
9384 SUVA • DOWNEY, CA 90240

| F.O.B. | CAR NUMBER | YOUR ORDER NUMBER | OUR ORDER INVOICE NO. |
|---|---|---|---|
| Delivered | | Ramon | 4838 |

| ROUTE | SHIPMENT | TERMS |
|---|---|---|
| C.F.I. Truck | | NET 30 days |

| QUANTITY | DESCRIPTION | PRICE PER M | AMOUNT |
|---|---|---|---|
| | PONDEROSA PINE RW RL KD | | |
| 19,023 BF | 5/4 1-5/16 S2S H & M Shopouts | $450.00 | $ 8,560.35 |

*Pd 5-13-96*
*ck #*
*returned NSF*
*5-31-96*

NET INVOICE   $ 8,560.35

*Credit   - 500.00*

*8060.35*

All claims must be reported within 10 days after receipt of goods. In event of a shortage claim or dispute, entire shipment must be held intact pending word from this office.

Customer agrees to pay a late charge on past due balances of 1½% per month (18% per annum) or the maximum rate allowed in customers state of residence, whichever is less.

**EXHIBIT    D**

CREATIVE FOREST INDUSTRIES

BY

WE THANK YOU FOR YOUR ORDER

ORIGINAL

DATE

February 29, 1996

 **INVOICE**

INVOICE TO

C.J.R. Frames
279 Zenith Stree t
Chula Vista, Ca   91911

SHIP TO

c/o Hampton Reload



# CREATIVE FOREST INDUSTRIES

(310) 923-7288 • FAX (310) 862-8600
9384 SUVA • DOWNEY, CA 90240

| F.O.B. | CAR NUMBER | YOUR ORDER NUMBER | OUR ORDER INVOICE NO. |
|---|---|---|---|
| Delivered | | Ramon | 4863 |

| ROUTE | SHIPMENT | TERMS |
|---|---|---|
| C.F.I. Truck | | NET 30 days |

| QUANTITY | DESCRIPTION | PRICE PER M | AMOUNT |
|---|---|---|---|
| | PONDEROSA PINE RW RL KD | | |
| 20,308 BF | 5/4 1-5/16 S2S H & M Shopouts | $475.00 | $ 9,646.30 |
| | | NET INVOICE | $ 9,646.30 |

All claims must be reported within 10 days after receipt of goods. In event of a shortage claim or dispute, entire shipment must be held intact pending word from this office.

Customer agrees to pay a late charge on past due balances of 1½ % per month (18% per annum) or the maximum rate allowed in customers state of residence, whichever is less.

**EXHIBIT   E**

WE THANK YOU FOR YOUR ORDER

CREATIVE FOREST INDUSTRIES

BY _____

ORIGINAL



**INVOICE**

**DATE** March 15, 1996

**INVOICE TO**
C.J.R. FRames
279 Zenith Street
Chula Vista, Ca    91911

**SHIP TO**
c/o Hampton Reload





# CREATIVE FOREST INDUSTRIES

(310) 923-7288 • FAX (310) 862-8600
9384 SUVA • DOWNEY, CA 90240

| F.O.B. | CAR NUMBER | YOUR ORDER NUMBER | OUR ORDER INVOICE NO. |
|---|---|---|---|
| Delivered | | Ramon | 4808 |

| ROUTE | SHIPMENT | TERMS |
|---|---|---|
| C.F.I. Truck | | NET 30 days |

| QUANTITY | DESCRIPTION | PRICE PER M | AMOUNT |
|---|---|---|---|
| | PONDEROSA PINE/SUGAR PINE RW RL KD | | |
| 9,414 BF | 5/4 1-5/16 S2S H.M. Shopouts | $475.00 | $ 4,471.65 |

*open not p yet*

NET INVOICE    $ 4,471.65

All claims must be reported within 10 days after receipt of goods. In event of a shortage claim or dispute, entire shipment must be held intact pending word from this office.

Customer agrees to pay a late charge on past due balances of 1½ % per month (18% per annum) or the maximum rate allowed in customers state of residence, whichever is less.

CREATIVE FOREST INDUSTRIES

**EXHIBIT    F**

BY _____

WE THANK YOU FOR YOUR ORDER

ORIGINAL

 March 15, 1996

 **INVOICE**

 C.J.R. Frames
279 Zenith Street
Chula Vista, CA    91911

c/o Hampton Reload
National City, California

 **CREATIVE FOREST INDUSTRIES**

(310) 923-7288 • FAX (310) 862-8600
9384 SUVA • DOWNEY, CA 90240

| F.O.B. | CAR NUMBER | YOUR ORDER NUMBER | OUR ORDER INVOICE NO. |
|---|---|---|---|
| Delivered | | Ramon | 4828 |

| ROUTE | SHIPMENT | TERMS |
|---|---|---|
| C.F.I. Truck | | NET 30 days |

| QUANTITY | DESCRIPTION | PRICE PER M | AMOUNT |
|---|---|---|---|
| | PONDEROSA PINE ROUGH RL KD | | |
| 10,363 BF | 1 x 6 Mill Run | $382.00 | $ 3,958.67 |
| | NET INVOICE | | $ 3,958.67 |

All claims must be reported within 10 days after receipt of goods. In event of a shortage claim or dispute, entire shipment must be held intact pending word from this office.

Customer agrees to pay a late charge on past due balances of 1½% per month (18% per annum) or the maximum rate allowed in customers state of residence, whichever is less.

CREATIVE FOREST INDUSTRIES

**EXHIBIT    G**      BY _____

WE THANK YOU FOR YOUR ORDER

ORIGINAL

May 10, 1996

 **INVOICE**

C.J.R. Frames
279 Zenith Street
Chula Vista, CA  91911

 **CREATIVE FOREST INDUSTRIES**

c/o Hampton Reload
National City, California

(310) 923-7288 • FAX (310) 862-8600
9384 SUVA • DOWNEY, CA 90240

| F.O.B. | CAR NUMBER | YOUR ORDER NUMBER | OUR ORDER INVOICE NO. |
|---|---|---|---|
| Delivered | | Ramon | 4940 |

| ROUTE | SHIPMENT | TERMS |
|---|---|---|
| C.F.I. Truck | | NET 30 days |

| QUANTITY | DESCRIPTION | PRICE PER M | AMOUNT |
|---|---|---|---|
| | PONDEROSA PINE RW RL KD | | |
| 11,377 BF | 4/4 Rough Mill  Run | $425.00 | $ 4,835.23 |
| 9,540 BF | 1-5/16 S2S Shopouts | $465.00 | $ 4,436.10 |
| 20,917 Total BF | | NET INVOICE | $ 9,271.33 |

All claims must be reported within 10 days after receipt of goods. In event of a shortage claim or dispute, entire shipment must be held intact pending word from this office.

Customer agrees to pay a late charge on past due balances of 1½ % per month (18% per annum) or the maximum rate allowed in customers state of residence, whichever is less.

CREATIVE FOREST INDUSTRIES

**EXHIBIT    H**    BY _____

WE THANK YOU FOR YOUR ORDER

ORIGINAL

**6573**

**CJR FRAMES, INC.**
279 ZENITH ST.   619-426-1034
CHULA VISTA, CA  91911

05-10      19 96

16-24
1220(7)

PAY TO THE
ORDER OF          CREATIVE FOREST INDUSTRIES                     $  8,060.35

_____ DOLLARS

NATIONAL CITY-HIGHLAND OFFICE
**WELLS FARGO BANK**
1199 HIGHLAND AVENUE, NATIONAL CITY, CA 91950

⑈006573⑈ ⑆122000247⑆0804 010759⑈

**EXHIBIT      I**

ORIGINAL



# CREATIVE
# FOREST
# INDUSTRIES

(310) 923-7288
9384 SUVA • DOWNEY, CA 90240

July 15, 1996

Ramon Diaz
Cesar Maciel
Marcos y Molduras del Pacifico
Baja California, Mexico
Fax No. 011-52-66-890517

Ramon Diaz
Cesar
CJR Frames, Inc.
Chula Vista, California
Fax No. 619-426-8955

Dear Mr. Diaz and Mr. Maciel:

I still have not received payment from you on the amounts you owe on the invoices listed below. As you know, I returned the check that you had sent for Invoice #4838 because the bank refused to cash it.

| INVOICE # | MONEY OWED | INVOICE SENT |
|-----------|------------|--------------|
| 4838 | $8,060.35 | 2/01/96 |
| 4863 | $9,646.30 | 2/29/96 |
| 4808 | $4,471.65 | 3/15/96 |
| 4828 | $3,958.67 | 3/15/96 |
| 4940 | $9,271.33 | 5/10/96 |

The total invoice amount owed is $35,408.30

I will give you another two weeks to pay me the money that you owe for the lumber I sold and delivered to you. Please notify me immediately of whether you intend to comply with this demand for payment.

Sincerely,

Bob Pate
BP:njp

EXHIBIT   J

ORIGINAL

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

CREATIVE FOREST INDUSTRIES,
a sole proprietorship

**FILED**

## DEFENDANTS

MARGOS Y MOLDURAS DEL PACIFICO, a Mexico business entity of unknown form; CJR FRAMES, INC. a California corporation; RAMON DIAZ, an individual; CESAR MACIEL, an individual

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  LOS ANGELES
(EXCEPT IN U.S. PLAINTIFF CASES)

AUG 9 1996

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

J. Ernesto Grijalva, Esq.
Margarita Haugaard, Esq.
LAW OFFICES OF J. ERNESTO GRIJALVA
550 West "B" Street, Suite 340
San Diego, CA 92101    (619) 234-1776

ATTORNEYS (IF KNOWN)

Wilda M. McClain, Jr.
McCLAIN & ASSOCIATES
1446 Front Street, Suite 300
San Diego, CA 92101-3425    (619) 385-3900

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE

DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C. Section 1331 (Federal Treaty - United Nations Convention on Contracts for the International Sale of Goods)
Fundamental breaches of contract.    **961388 H CM**

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R R & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl Ret Inc Security Act | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $ 36,000

Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

N/A

JUDGE _____  DOCKET NUMBER _____

DATE  August 9, 1996

SIGNATURE OF ATTORNEY OF RECORD
J. Ernesto Grijalva

UNITED STATES DISTRICT COURT